IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | § § § § | |
| Plaintiffs, | § § | |
| v. | § § | Case No. 3:19-cv-575-C |
| W. NEIL "DOC" GALLAGHER, GALLAGHER FINANCIAL GROUP, INC., and W. NEIL GALLAGHER, Ph.D AGENCY, INC. | § § § § § § | |
| Defendants. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

Before the Court is the Receiver's Claims Report [Dkt. 69], Supplemental Claims Report [Dkt. 89], and request for a claims adjudication hearing, which were referred to this Court on December 31, 2019. The undersigned United States magistrate judge, having conducted a hearing on January 30, 2020 to consider the Receiver's recommendations regarding claims filed in the receivership and objections to such recommendations, makes the following findings, conclusions and recommendations.

**Background**

On March 8, 2019, the Court entered an Order Appointing Receiver [Dkt. No. 14] ("Receivership Order") that appoints Cort Thomas as the Receiver of the assets of Defendants and authorized the Receiver to obtain from third parties documents

and information regarding the business of Defendants and the collection of funds due to Defendants.

On May 22, 2019, the Court entered an Order Establishing Claims Adjudication Process [Dkt. No. 44] (the "Claims Process Order").

Pursuant to the Claims Process Order, the Receiver notified each claimant of their right to file a Claim on or before a Bar Date of August 15, 2019 ("Claims Bar Date") using a Proof of Claim form approved by the Court.

Pursuant to the Claims Process Order, on September 16, 2019 the Receiver filed with the Court the Receiver's Claims Report setting forth all Claims, other than Administrative Claims, filed with the Receiver together with the Receiver's recommendations concerning all Claims; the classification of Claims; and the allocation of assets to be distributed in payment of the Claims. *See* Dkt. No. 69.

Pursuant to the Claims Process Order, within 10 days after filing the Receiver's Claims Report, the Receiver provided notice to each Claimant of the Receiver's recommendation concerning the Claimant's Claim. And the Receiver posted a copy of the Receiver's Claims Report on the website managed by the Receiver at www.gallagherfg.com.

The Receiver received twenty-eight objections from claimants to the Receiver's Claims Report (the "Objecting Claimants"). As to all other claimants (the "Non-Objecting Claimants"), no objections were filed with the Receiver.

Pursuant to the Claims Process Order, on November 1, 2019, the Receiver filed his Supplemental Claims Report Regarding Objections Received From Investor and Creditor Claimants. *See* Dkt. No. 89 (the "Receiver's Supplemental Report").

On December 31, 2019, Judge Cummings referred the Receiver's Claims Report, Supplemental Report, and request for a claims adjudication hearing to the undersigned United States Magistrate Judge. *See* Dkt. No. 106.

On January 9, 2020 the undersigned entered an Order Setting Claims Adjudication Hearing for January 30, 2020 at 9:30 a.m. *See* Dkt. No. 111.

The Receiver provided notice of the Claims Adjudication Hearing to each of the claimants who filed objections to the Receiver's recommendations regarding their claims that have not been resolved.

## Analysis

Based on the pleadings, the arguments of counsel, and the evidence presented, the undersigned makes the following findings, conclusions, and recommendations regarding the objections made by the following claimants to the Receiver's recommendations:

### A.    Pre-2013 DGI Account Investments:

Due to the unavailability of bank records prior to 2013, the Receiver recommends that claimants who invested monies in Defendant Gallagher Financial Group, Inc.'s Diversified Growth and Income Strategy Account (the "DGI Account") prior to 2013 be repaid such monies only after payment in full of any post-2013 DGI investors' claims.

According to the Receiver, for investments made prior to January 1, 2013, the Receiver does not have bank records from which to corroborate claims for such investments. Even if a claimant provides the Receiver with bank records establishing the deposit of funds with Defendants, the Receiver has no means of determining how much, if anything, was returned to the claimant prior to January 1, 2013. Rather than refuse to recognize claims for investments made prior to January 1, 2013, the Receiver proposes placing such claims in a separate category called "Pre-2013 Claims" and further proposes that such claims be paid only after approved claims for investments made after January 1, 2013 are paid in full. The Receiver asserts this distinction ensures that monies distributed from the receivership estate to the approved claimants are reimbursement of losses that the Receiver can confirm from bank records. As such, the Receiver argues that this categorization of claims for monies invested prior to January 1, 2013 and proposal to pay such claims only after approved claims for investments made after January 1, 2013 are paid in full is equitable and just.

Although the undersigned understands why the Receiver recommends treating pre- and post-1983 investments differently, the undersigned recommends that the Court, as a matter of equity, should use its discretion to treat them the same. And the Receiver himself noted at the hearing that, to the extent that the Court "would rather treat the pre-2013 investments, which is two million dollars, the same as post-2013, it will make a negligible impact on the ultimate recovery of all the other investors."

4

The following claimants who invested monies in the DGI Account prior to 2013 object to the Receiver's proposed distribution plan: Shirley Avant; Michael Dean and Lynda M. Zappitelli-Dean; Michael Jurcak; and Keith Owens.

### (1)    **Shirley Avant**:

Shirley Avant timely filed a claim in the amount of $75,490.46 for investments after January 1, 2013, and, on November 15, 2012, she provided the Receiver with evidence of $136,850.65 in investments before January 1, 2013. After considering the dates of deposit of funds and the distributions traced to Shirley Avant, the Receiver recommends that Shirley Avant's Pre-2013 DGI Account Investments claim be approved in the amount of $74,581.34 for that category. For the reasons stated above, Shirley Avant's objections to the Receiver's recommendation concerning her claim should be sustained.

### (2)    **Michael Dean and Lynda M. Zappitelli-Dean**:

Michael Dean and Lynda M. Zappitelli-Dean timely filed two proofs of claim – one for a $175,000 investment in December, 2005 and the second for a $52,002.75 reinvestment of funds into the DGI account in September, 2017. And the Receiver recommended that the claim for $52,002.75 be characterized as a Pre-2013 Claim and reduced to $45,680.34 because that sum was the amount re-invested with Defendants.

After considering the information provided by the Deans and the Receiver's forensic accounting, the Receiver recommended that the $175,000 claim be denied because the monies were not put into the DGI account, but were put into non-DGI

5

investments. Monies that were not received by Defendants but, instead, were invested by claimants with third parties who are not in receivership, should not be included in any claim approved in the receivership. The Receiver properly denied the Deans' claim for $175,000 that was paid to a third party and not received by Defendants.

The objections of Michael Dean and Lynda M. Zappitelli-Dean to the Receiver's recommendation concerning their claim for $175,000 should be overruled, but their objections to the characterization and treatment of their Pre-2013 claims should be sustained.

(3)    **Michael Jurcak**:

Michael Jurcak timely filed a proof of claim for $18,000. The Receiver determined that Mr. Jurcak invested $40,000 with DGI in November, 2011 and received distributions of $24,450 for a net loss of $15,550. Accordingly, the Receiver characterized Mr. Jurcak as having a Pre-2013 Claim and reduced the claim to $15,500. Mr. Jurcak objected to the Receiver's recommendation on the basis that the monies lost were Mr. Jurcak's life savings and that he is 82 years old and devastated by Defendants' conduct.

The Receiver properly determined not to treat Mr. Jurcak's claim differently than other claimants due to his age and the effect that the loss has had on his life because many other claimants are elderly and were likewise devastated by Defendants' conduct. But, for the reasons stated above, the objection of Michael

Jurcak to the Receiver's recommendation concerning the Pre-2013 claim should be sustained.

      (4)   **Keith Owens**:

Keith Owens timely filed a claim with the Receiver in the amount of $452,230. The Receiver determined that $90,000 was invested prior to January 1, 2013 and that this portion of the claim should be categorized as a Pre-2013 Claim. The Receiver determined that Mr. Owens received a distribution of $2,000 from his $90,000 investment and therefore the Receiver recommended approval of an $88,000 Pre-2013 Claim. And the Receiver determined that Mr. Owens invested $254,000 after January 1, 2013 and received distributions after January 1, 2013 of $38,483.50. Accordingly, the Receiver recommended approval of a claim after January 1, 2013 of $215,560.15. Mr. Owens objects to the Receiver's recommendation to categorize part of the claim as a Pre-2013 Claim, and objects to the Receiver's recommended amount for his claim after January 1, 2013. Mr. Owens contends he invested $25,000 more than is recognized by the Receiver, but the Receiver showed that a $25,000 cashier's check was sent by Defendants to Mr. Owens, never deposited by Mr. Owens, and was returned to Defendants, and the Receiver therefore treated it as both a distribution to Mr. Owens and deposit by Mr. Owens, not affecting the Receiver's recommendation regarding the claim.

The Receiver properly offset the $90,000 by the return of $2,000 by Defendants to Mr. Owens. The Receiver also properly calculated Mr. Owens net claim of $215,560.15 for monies invested and received after January 1, 2013.

Accordingly, the objection of Keith Owens to the Receiver's recommendation should be sustained in part as to the Pre-2013 Claim and overruled in part as to the Receiver's calculations.

### B.    Objections Regarding Non-DGI Investments:

The following claimants objected to the Receiver's recommendations regarding their claims for monies placed in investments other than the DGI Investments operated by Defendants: Lois Bartels; Nelson and Beverly Kohring; Beverly Kohring, individually; Roger Macleod; and AJ and Susan Pippi.

### (1)    Lois Bartels:

John and Lois Bartels timely filed a proof of claim for $480,233.78 for their investments in DGI but also claimed deposits of $86,579.93 with AXA Equitable and $18,733.31 with Life Settlements that were recommended by Defendant Gallagher. The Receiver recommends approval of a claim of $352,705.94 for the investments in DGI, but the Receiver did not approve the claim for monies deposited with AXA Equitable and with Life Settlements because there is insufficient documentation to determine if there were any losses with these third-party investments. Lois Bartels objected to the Receiver not including in her claim the monies deposited with third parties.

To the extent that the claimant did not invest her monies with Defendants in DGI, such monies should not be included in the approved claims of the receivership unless and until all DGI claims are paid by the Receiver. In the absence of documentation to corroborate the amount of investment with a third party, whether

there were losses in the investment, and the amount of any such losses, the Receiver properly excluded such claim.

The objection of Lois Bartels to the Receiver's recommendation regarding her claim should be overruled.

(2) **<u>Nelson and Beverly Kohring</u>**:

Nelson and Beverly Kohring timely filed a claim with the Receiver in the amount of $113,326.91. The Receiver determined that the claim was not based on monies invested with DGI but was based on monies invested with Life Partners, a life settlement firm recommended by Defendant Gallagher. And the Receiver had insufficient information and documentation to determine the amount of loss by the claimants with this third party.

To the extent that the claimants did not invest their monies with Defendants in DGI, such monies should not be included in the approved claims of the receivership unless and until all DGI claims are paid by the Receiver. In the absence of documentation to corroborate the amount of investment with a third party, whether there were losses in the investment, and the amount of any such losses, the Receiver properly excluded such claim.

The objection of Nelson and Beverly Kohring to the Receiver's recommendation regarding their claim should be overruled.

(3) **<u>Beverly Kohring, individually</u>**:

Beverly Kohring timely filed a claim with the Receiver in the amount of $37,710. The Receiver determined that the claim was not based on monies invested

9

with DGI but was based on monies invested with Life Partners, a life settlement firm recommended by Defendant Gallagher. And the Receiver had insufficient information and documentation to determine the amount of loss by the claimants with this third party.

To the extent that the claimant did not invest her monies with Defendants in DGI, such monies should not be included in the approved claims of the receivership unless and until all DGI claims are paid by the Receiver. In the absence of documentation to corroborate the amount of investment with a third party, whether there were losses in the investment, and the amount of any such losses, the Receiver properly excluded such claim.

The objection of Beverly Kohring, individually, to the Receiver's recommendation regarding her claim should be overruled.

(4)    **Roger Macleod**:

Roger Macleod timely filed a proof of claim in the amount of $605,011.73. The Receiver recommended approval of the claim. Mr. Macleod informed the Receiver he had additional monies he invested with Life Partners and Radiant at the recommendation of Defendant Gallagher and asked the Receiver to include such investments in his claim if such third-party investments were to be considered as part of the claims process. The Receiver informed Mr. Macleod that such monies could not be included in the claim process because the monies were not paid to Defendants but were paid to third parties. Mr. Macleod objects to the Receiver not including such monies in the claims process. The Receiver determined that any

10

additional claim would not be based on monies invested with DGI but rather monies invested with Life Partners and Radiant. And the Receiver had insufficient information and documentation to determine the amount of loss by the claimants with this third party.

To the extent that the claimant did not invest his monies with Defendants in DGI, such monies should not be included in the approved claims of the receivership unless and until all DGI claims are paid by the Receiver. In the absence of documentation to corroborate the amount of investment with a third party, whether there were losses in the investment, and the amount of any such losses, the Receiver properly excluded such claim.

The objection of Roger Macleod to the Receiver's recommendation regarding his claim should be overruled.

(5)    **AJ and Susan Pippi**:

AJ and Susan Pippi timely filed a proof of claim in the amount of $620,500. The Receiver determined that $110,000 was invested with Life Partners and not received by Defendants. And the Receiver determined the claimants invested $288,075.27 with Defendants and received distributions of $93,416. Accordingly, the Receiver recommended approval of the claimants' claim in the amount of $194,659.27 and denial of the remainder of the claim. The claimants object to the denial of the remainder of their claim by the Receiver.

The Receiver properly reduced the claim by the amount of monies that were invested with Life Partners and that were not received by Defendants. And the

Receiver properly based his claim recommendation on the monies deposited with Defendants that could be corroborated with bank records, less distributions to the claimants that were shown by bank records. The Receiver properly denied the portion of the claimants' claim that could not be supported by bank records.

The objection of AJ and Susan Pippi to the Receiver's recommendation regarding his claim should be overruled.

### C.    Objections Regarding Distributions:

The following claimants objected to the Receiver's recommendations regarding their claims on the basis that they allege they did not receive distributions from Defendants as identified by the Receiver: Kerry and Patty Erichsen; Bertie Lackey; Jack Lewis; Margaret Owens; Rafael Subialdea; and Roy Wederbrook.

### (1)    Kerry and Patty Erichsen:

Kerry and Patty Erichsen timely filed a proof of claim in the amount of $289,521. The Receiver determined, on the basis of bank records, that the net claim should be reduced to $173,961.72. The claimants object to the Receiver including in distributions to the claimants a $50,000 cashier's check that the claimants contend they never deposited. The Receiver found no bank record of the cashier's check being returned to Defendants.

At the hearing, Patty Erichsen testified that neither she nor Kerry Erichson deposited or cashed a $50,000 cashier's check Doc Gallagher sent that was wrongfully made payable to both of them instead of only to Kerry Erichson. Doc

12

Gallagher sent them a replacement $50,000 cashier's check and they returned the first check to Doc Gallagher. The Erichsons deposited only the second check. *See* Dkt. No. 129 at 50.

Based on this testimony, the undersigned finds that Kerry and Patty Erichson deposited only one $50,000 cashiers check. Accordingly, the objection of Kerry and Patty Erichsen to the Receiver's recommendation regarding their claim should be sustained.

(2)    **Bertie Lackey**:

Bertie Lackey timely filed a proof of claim in the amount of $62,662.88. The Receiver determined, on the basis of bank records, that the net claim should be reduced to $30,129.05. Ms. Lackey objects to the Receiver's recommendation on the basis that she does not remember receiving the distributions traced to her by the Receiver and she objects to the Receiver reducing her claim by interest checks she received from Defendants.

The Receiver properly based his claim recommendation on the monies deposited with Defendants that could be corroborated with bank records, less distributions to the claimants that were shown by bank records. Because the DGI investment scheme was a Ponzi scheme, the payments made by Defendants to the claimant as "interest" were not interest but rather were from monies deposited by other investors in DGI. Accordingly, the Receiver properly reduced the claimant's claim by the monies received by the claimant that were characterized as interest payments.

13

The objection of Bertie Lackey to the Receiver's recommendation regarding her claim should be overruled.

   (3) **<u>Jack Lewis</u>**:

Jack Lewis timely filed a proof of claim in the amount of $68,521.64. The Receiver determined, on the basis of bank records, that the claim should be reduced to $25,044.89. Mr. Lewis objects to the Receiver's recommendation, claiming he received only $10,000 instead of the $43,398.23 traced to him by the Receiver.

The Receiver properly based his claim recommendation on the monies deposited with Defendants that could be corroborated with bank records, less distributions to Mr. Lewis that were shown by bank records.

The objection of Jack Lewis to the Receiver's recommendation regarding his claim should be overruled.

   (4) **<u>Margaret Owens</u>**:

Margaret Owens timely filed a proof of claim in the amount of $569,476. The Receiver determined on the basis of bank records that the claim should be reduced by distributions made by Defendants to third parties on behalf of Ms. Owens, including two cashier's checks to First Baptist Church. Ms. Owens, by and through her son, objected to the Receiver's reduction of the claim by $112,197.59 and contends that such reduction should be limited to $106,197.59. The Receiver determined that the two cashier's checks to First Baptist Church were never deposited and therefore the Receiver revised his recommendation and reduced her claim to $495,805.89.

The Receiver properly based his revised claim recommendation on the monies deposited with Defendants that could be corroborated with bank records, less distributions to Mr. Owens that were shown by bank records.

The objection of Margaret Owens to the Receiver's revised recommendation regarding her claim should be overruled.

(5)    **Rafael Subialdea**:

Rafael Subialdea timely filed a proof of claim in the amount of $250,000. The Receiver determined on the basis of bank records that Mr. Subialdea received distributions to him or to third parties for his benefit that exceeded the amount of his investments and that Mr. Subialdea has no claim in the receivership. Mr. Subialdea objected to the Receiver's denial of his claim contending that the payments Mr. Subialdea received were interest payments on his principal investment.

The Receiver properly based his claim recommendation on the bank records. Because the DGI investment scheme was a Ponzi scheme, the payments made by Defendants to the claimant as "interest" were not interest but rather were from monies deposited by other investors in DGI. Accordingly, the Receiver properly reduced the claimant's claim by the monies received by the claimant that were characterized as interest payments. A claimant who received monies in excess of the monies invested with Defendants does not have a claim in the receivership.

The objection of Rafael Subialdea to the Receiver's recommendation regarding his claim should be overruled.

15

(6)    **Roy Wederbrook**:

Roy Wederbrook timely filed a proof of claim for $164,929.76. The Receiver determined on the basis of bank records that the claim should be reduced to $136,873.73. Mr. Wederbrook objected to the Receiver's calculation and requested the Receiver to provide him with the detail regarding such distributions. The Receiver provided the detail of the distributions Mr. Wederbrook as requested.

The Receiver properly based his revised claim recommendation on the monies deposited with Defendants that could be corroborated with bank records, less distributions to Roy Wederbrook or to third parties for the benefit of Roy Wederbrook that were shown by bank records.

The objection of Roy Wederbrook to the Receiver's recommendation regarding his claim should be overruled.

D.    **Objection Regarding March 2019 Investments – Ruth Harris**

Ruth Ann Harris timely filed a proof of claim for $162,023.85. The Receiver, based on the bank records, reduced her claim to $149,802.42. Ms. Harris filed an objection to the Receiver's recommendation to treat all Post-2013 DGI Investors on a *pro rata* basis. Ms. Harris' DGI investment was deposited on March 7, one day before Defendant Gallagher's accounts were frozen.

The *pro rata* treatment recommended by the Receiver for the post 2013 DGI Investments is generally recognized as the most equitable manner for treating claims in Ponzi scheme cases, even in instances in which an investors' monies can be traced into an account in which monies are seized by a receiver. *See United*

16

*States v. Durham,* 86 F.3d 70, 73 (5th Cir. 1996); *SEC v. Elliott,* 953 F.2d 1560, 1570 (11th Cir. 1992). Here, it would not be fair overall to treat recent investors differently just because bank records are not dependable.

The objection of Ruth Ann Harris to the *pro rata* treatment of her claim should be overruled.

### E.    Objections to Late Claims and Late Objections:

Two claimants, Ray Fulenwider and Trevor Holloway, object to the Receiver's recommendation that their claim be denied because the claimants submitted their proofs of claim after the bar date established by the Court. And two others filed late or deficient claims or objections: Karen Lucchesi and Jeff Pennington.

### (1)    Ray Fulenwider:

The bar date established by the Court for filing claims with the Receiver was August 15, 2019. Ray Fulenwider filed a proof of claim on October 22, 2019 in the amount of $87,949.41. Mr. Fulenwider has explained that he had health complications that caused his delayed submission of his proof of claim. The Receiver determined on the basis of the bank records that Mr. Fulenwider received distributions in excess of the monies deposited with DGI and that therefore the claim should be disallowed, regardless of the timeliness of the claim. And the Receiver disallowed the claim on the basis that it was not timely and was filed after the Bar Date.

The Receiver properly based his claim recommendation on the monies deposited with Defendants that could be corroborated with bank records, less

17

distributions to Mr. Fulenwider that were shown by bank records. Since the bank records show that Mr. Fulenwider received monies from Defendants in excess of the monies Mr. Fulenwider deposited with Defendants, the Receiver properly disallowed Mr. Fulenwider's claim. Because the Receiver properly disallowed Mr. Fulenwider's claim, there is no need for the Court to determine whether there was good cause shown to allow the claim even though it was filed after the Bar Date.

In his Third Supplemental Brief in Support of Claims Report [Dkt. No. 129], the Receiver informed the Court that, after the filing of his Supplemental Claims Report, the Receiver spoke with Mr. Fulenwider about the need for documentation of a $50,000 check that Mr. Fulenwider claims that he gave to Gallagher on June 24, 2010. While Mr. Fulenwider twice mailed copies of this check to the Receiver, the Receiver did not receive either attempt. But, most recently, after the claims adjudication hearing, Mr. Fulenwider did successfully provide a copy of the check, which substantiates the investment, to the Receiver. Accordingly, Mr. Fulenwider invested a total of $150,000 ($100,000 prior to 2013 and $50,000 after January 1, 2013), while he received a total of $101,112.67 in distributions ($38,681.77 prior to 2013 and $62,430.90 after January 1, 2013). The undersigned recommends that the Court overlook the untimely filing of Mr. Fulenwider's proof of claim in light of his health issues and accept the Receiver's recommendation of a pre-2013 DGI Claim of $48,887.33. *See* Dkt. No. 129.

The objection of Ray Fulenwider should be sustained.

(2)    **Trevor Holloway**:

18

The bar date established by the Court for filing claims was August 15, 2019. Trevor Holloway filed a claim on October 1, 2019 and October 5, 2019 in the total amount of $50,000. The Receiver determined on the basis of the bank records that Mr. Holloway invested $50,000 with Defendants and received distributions of $31,000 from Defendants for a net claim of $19,000. Because the claim was submitted after the Bar Date the Receiver recommended denial of Mr. Holloway's claim. Mr. Holloway objects to the Receiver's recommendation on the basis that Mr. Holloway had moved from the address where the proof of claim was originally mailed and was unaware of the claim process.

The Receiver properly based his calculation of the claim on the monies deposited with Defendants that could be corroborated with bank records, less distributions to Mr. Holloway that were shown by bank records. Considering that receiverships are governed by equity, Mr. Holloway has shown good cause for excusing the late filing of the proof of claim. Moreover, there was no prejudice to the receivership estate by the late filing of the proof of claim. Accordingly, the Receiver should not disallow the proof of claim because it was filed after the Bar Date.

The objection of Trevor Holloway should be sustained to the extent it complains of the Receiver disallowing the claim because it was filed after the Bar Date.

       (3)    **<u>Karen Lucchesi</u>**:

Karen Lucchesi filed a proof of claim for $70,000. But she did not comply with the Claims Order in that she submitted the proof of claim electronically and never

provided her signature page. The Receiver and his accountants were unable to substantiate any of the $70,000 in claimed cash investments through Gallagher's bank records, and the Receiver has recommended that her claim be denied absent further substantiation of Ms. Lucchesi's investments. Ms. Lucchesi did not timely object to the Receiver's recommendation but instead filed an objection with the Receivership on December 23, 2019. Ms. Lucchesi objects that her cash investments should be honored and attaches an example of a letter acknowledging an investment of $10,000 in Gallagher Financial Group.

The Receiver properly based his claim recommendation on the lack of sufficient evidence of Ms. Lucchesi's cash investments, both from the bank records and documentation provided by Ms. Lucchesi. Additionally, Ms. Lucchesi did not timely or properly submit a full and complete proof of claim, nor did she submit a timely objection to the Receiver's claim recommendation.

The objection of Karen Lucchesi to the Receiver's recommendation regarding her claim should be overruled.

(4)    **Jeff Pennington**

In his Fourth Supplemental Brief in Support of Claims Report [Dkt. No. 139], the Receiver informed the Court that Mr. Pennington was not previously identified as an investor during the initial analyses performed by Receiver, his team, and his forensic accountants, who were working from Gallagher's incomplete records in attempting to identify all potential investors. Accordingly, Mr. Pennington was not included in the initial mailout. Mr. Pennington has represented that he was

unaware of the Receivership until March of 2020. When he did become aware of the Receivership, he reached out to the Receiver and promptly completed his proof of claim.

According to Mr. Pennington's proof of claim – which has subsequently been confirmed by the Receiver's forensic accountants by analyzing Gallagher's bank records – Mr. Pennington invested a total of $40,000 on or around July 21, 2017. Mr. Pennington later received a check back from Gallagher for $20,000 on or around January 7, 2019. Had his proof of claim been timely filed, the Receiver would have accordingly recommended that the Court approve a post-January 1, 2013 claim for Mr. Pennington in the amount of $20,000.

The Receiver has explained the Bar Date set out in the Order Establishing Claims Process to Mr. Pennington. *See* Dkt. 44 at ¶ 1.5 But, if the Court is ultimately willing to excuse the untimely submission on account of Mr. Pennington's lack of notice of the Receivership, the Receiver recommends approval of a post-January 1, 2013 claim in the amount of $20,000.

The undersigned recommends that the Court accept Mr. Pennington's late-filed proof of claim and the Receiver's recommendation concerning that claim.

F.     **Other Investor Objections:**

The following claimants made miscellaneous objections to the Receiver's recommendations regarding their claims: Carroll Plunk; Peter and Mary Gannon; Scott Harper and Lois Ringhoffer; Sheila Jenkins; Al McCluney; Paloma Meneley; and Samuel and Nancy Shewmaker.

21

(1)    **Carroll Plunk**:

Carroll Plunk timely filed a proof of claim for $173,262.37. The Receiver determined on the basis of bank records that distributions from Defendants to Mr. Plunk or to third parties on behalf of Mr. Plunk exceeded the amount invested by Mr. Plunk and therefore recommended denial of Mr. Plunk's claim. Mr. Plunk objected to the Receiver including a payment from Defendants to the IRS for $50,108, as a payment made on behalf of Mr. Plunk since Defendants created the tax liability by not treating the investment as a qualified fund, and represented to Mr. Plunk that he owed no financial obligation or debt to Gallagher Financial Group, Inc. for any IRS issue.

The Receiver properly based his claim recommendation on the monies deposited with Defendants that could be corroborated with bank records, less distributions to Mr. Plunk or to third parties for the benefit of Mr. Plunk that were shown by bank records. The Receiver properly included the payment by Defendants to the IRS as a payment for the benefit of Mr. Plunk despite the representations of Defendants because it would otherwise be inequitable to other investors who were victims of wrongdoing by Defendants to not include the payment as benefitting Mr. Plunk.

The objection of Carroll Plunk to the Receiver's recommendation regarding his claim should be overruled.

(2)    **Peter and Mary Gannon**:

Peter and Mary Gannon timely filed a proof of claim in the amount of $126,589.08. The Receiver determined on the basis of bank records that the claim should be reduced to $74,797 because of distributions made by Defendants to Peter and Mary Gannon or for their benefit. Mr. and Mrs. Gannon objected to the Receiver reducing their claim by payments made by Defendants to the IRS for the benefit of Mr. and Mrs. Gannon. And Mr. and Mrs. Gannon objected to the Receiver not recognizing the interest or growth in the account that was represented by Defendants.

The Receiver properly based his claim recommendation on the monies deposited with Defendants that could be corroborated with bank records, less distributions to Peter and Mary Gannon or to third parties for the benefit of Peter and Mary Gannon that were shown by bank records. The Receiver properly included payments by Defendants to the IRS as payments for the benefit of Mr. and Mrs. Gannon despite the tax liability being created because of Defendants' mistakes. Otherwise, it would be inequitable to other investors who were victims of wrongdoing by Defendants to not include the payment as benefitting Mr. and Mrs. Gannon. And the Receiver properly did not recognize the interest or growth in the account of Mr. and Mrs. Gannon that was represented by Defendants because such representations were false and any purported interest or growth in the investment was fictitious.

The objection of Peter and Mary Gannon to the Receiver's recommendation regarding their claim should be overruled.

(3)    **Scott Harper and Lois Ringhoffer**:

Scott Harper and Lois Ringhoffer timely filed a proof of claim for $78,337.69. The Receiver reduced the claim based upon a lack of information regarding alleged deposits made by the claimants with Defendants. The claimants objected to the Receiver not including certain deposits in the claim recommendation and provided the Receiver with additional bank records to corroborate the claimants' deposits. Accordingly, the Receiver revised his recommendation regarding their claim and based on the bank records recommends that $18,170.15 be characterized as a Pre-2013 Claim and that a claim of $20,291.33 be allowed for DGI investments after January 1, 2013.

The Receiver properly based his revised claim recommendation on the monies deposited with Defendants that could be corroborated with bank records, less distributions to the claimants that were shown by bank records. The Receiver properly characterized investments made prior to January 1, 2013 as a "Pre-2013 Claim," but, for the reasons stated above, claims for monies invested prior to January 1, 2013 should be treated the same as those for investments made after January 1, 2013.

The objection of Scott Harper and Lois Ringhoffer to the Receiver's revised recommendation concerning their "Pre-2013" claim should be sustained, and, to the extent the objection of Scott Harper and Lois Ringhoffer has not been otherwise resolved by the Receiver's revised recommendation regarding their claim, the objection should be overruled.

(4)    **Sheila Jenkins**:

Sheila Jenkins timely filed a proof of claim for $1,548,517.94 and also a proof of claim for her IRA account in the amount of $29,735.88. The Receiver determined on the basis of the bank records that the claim for her IRA account should be reduced to $26,986.41 and that, of her claim for $1,548,517.94, $495,220.36 should be characterized as a Pre-2013 Claim and the remainder of her claim for investments after January 1, 2013 should be disallowed because she received distributions in excess of the amount invested. Ms. Jenkins generally objected to the Receiver's recommendations, requesting more information. In response, the Receiver attempted to provide Ms. Jenkins with the information but was unsuccessful in reaching resolution.

The Receiver properly based his claim recommendation on the monies deposited with Defendants that could be corroborated with bank records, less distributions to the Sheila Jenkins that were shown by bank records. The Receiver properly characterized investments made prior to January 1, 2013 as a "Pre-2013 Claim," but, for the reasons stated above, claims for monies invested prior to January 1, 2013 should be treated the same as those for investments made after January 1, 2013.

The objection of Sheila Jenkins to the Receiver's recommendation regarding her "Pre-2013 Claim" should be sustained; otherwise, her objection should be overruled.

(5)    **Al McCluney**:

25

Al McCluney timely filed a proof of claim in the amount of $5,000. The Receiver determined on the basis of the bank records that the claim should be reduced to $1,518.56 to account for distributions from Defendants received by Mr. McCluney. Mr. McCluney objected to the Receiver's recommendation contending that "profits" of $3,481.44 that he made from an original investment of $20,000 in May, 2016 should not offset the later investment of $5,000 that he made in January, 2019.

The Receiver properly examined the total monies deposited by the claimant and compared that total amount to the total amount of monies distributed by Defendants to or for the benefit of the claimant in calculating the claim of Mr. McCluney. Because DGI was operated as a Ponzi scheme, the "profit" Mr. McCluney purportedly received from his original investment was fictitious and the Receiver properly reduced Mr. McCluney's claim by the amount he received as fictitious profits.

The objection of Al McCluney to the Receiver's recommendation regarding his claim should be overruled.

(6)    **Paloma Meneley**:

Paloma Meneley timely filed a proof of claim in the amount of $868,801. The Receiver determined based on the bank documents that $15,000 of her claim was for investments prior to January 1, 2013 and characterized such claim as a Pre-2013 Claim. And the Receiver determined based on the bank documents that her claim for investments after January 1, 2013 should be reduced to $191,519.93.

26

Paloma Meneley objected to the Receiver's recommendation because it reduced her claim by payments made by Defendants on behalf of Ms. Meneley to the IRS; because she does not agree with the Receiver's findings regarding the distributions paid to or for the benefit of Ms. Meneley by Defendants; and because she believes investments in third parties recommended by Defendants should be included in her claim.

The Receiver properly based his claim recommendation on the monies deposited with Defendants that could be corroborated with bank records, less distributions to Paloma Meneley that were shown by bank records. The Receiver properly characterized investments made prior to January 1, 2013 as a "Pre-2013 Claim," but, for the reasons stated above, claims for monies invested prior to January 1, 2013 should be treated the same as those for investments made after January 1, 2013. Also, the Receiver properly included payments by Defendants to the IRS as payments for the benefit of Ms. Meneley. Otherwise, it would be inequitable to other investors who were victims of wrongdoing by Defendants to not include the payment as benefitting Ms. Meneley. Additionally, the Receiver properly did not recommend inclusion of any of the monies that Ms. Meneley claims that she invested with third parties because such monies were not received by Defendants. And, even if Ms. Meneley had provided documentation concerning her investments with third parties, those monies should not be included in the approved claims of the receivership unless and until all DGI claims are paid by the Receiver.

The objection of Paloma Meneley to the Receiver's recommendation regarding her "Pre-2013 Claim" should be sustained; otherwise, her objection should be overruled.

(7)    **Samuel and Nancy Shewmaker**:

Samuel and Nancy Shewmaker timely filed a proof of claim in the amount of $369,955. The Receiver determined based on the bank records that $17,429.67 of their claim should be characterized as a Pre-2013 Claim and that the remainder of their claim should be disallowed because the distributions from Defendants to the claimants exceed their investments. Samuel and Nancy Shewmaker object to the Receiver's recommendation because it does not recognize $528,673 they invested in Retirement Value at the suggestion of Defendant Gallagher. And they object to the Receiver not recognizing $35,000 in cash that they claim that they deposited with Defendants in 2012. Finally, they object to the Receiver's determination of distributions made from Defendants to or for the benefit of the claimants.

The Receiver properly based his claim recommendation on the monies deposited with Defendants that could be corroborated with bank records, less distributions to the claimants that were shown by bank records. The Receiver properly did not recognize alleged cash investments made by the claimants with Defendants in 2012 because such investments could not be corroborated by the bank records. The Receiver properly characterized investments made prior to January 1, 2013 as a "Pre-2013 Claim," but, for the reasons stated above, claims for monies invested prior to January 1, 2013 should be treated the same as those for

28

investments made after January 1, 2013. To the extent the claimants did not invest their monies with Defendants in the DGI, such monies should not be included in the approved claims of the receivership unless and until all such claims are paid by the Receiver. In the absence of documentation to corroborate an investment with a third party and whether there were losses in the investment, the Receiver properly excluded such claim.

The objection of Samuel and Nancy Shewmaker to the Receiver's recommendation regarding their "Pre-2013 Claim" should be sustained; otherwise, their objection should be overruled.

### G.    Creditor Objections:

Two creditors, Svetlin Burgudzhiev and Mitch Gallagher, objected to the Receiver's recommendation regarding their claims. The objection by Mitch Gallagher was resolved pursuant to a settlement agreement between the Receiver and Mitch Gallagher that was approved by the Court on January 14, 2020. *See* Dkt. No. 115. And now Svetlin Burgudzhiev is the only creditor who objected to the Receiver's recommendation.

Svetlin Burgudzhiev, a former employee of Defendants, timely filed a proof of claim in the amount of $58,100, claiming Defendants stole $58,100 in settlement proceeds that should have been paid to the claimant. And the claimant requests the Receiver to file a lawsuit against certain individuals on behalf of the claimant. The Receiver characterized Mr. Burgudzhiev's claim as a creditor claim. The Receiver

informed Mr. Burgudzhiev that the Receiver cannot file a lawsuit on his behalf as requested because it is beyond the scope of the Receiver's authority.

Because Mr. Burgudzhiev's claim does not arise out of monies that he invested with Defendants, the Receiver properly characterized the claim as a creditor claim. The Receiver properly informed Mr. Burgudhiev that filing suit on his behalf against certain individuals is beyond the scope of the Receivership Order.

The objection of Svetlin Burgudzhiev to the Receiver's recommendation regarding his claim should be overruled.

## G.    Non-Objecting Claimants:

As to the vast majority of investor and creditor claims, no objections were filed.

The Non-Objecting Investors timely filed their proofs of claim on or before the Claims Bar Date. The Non-Objecting Investors did not file objections to the Receiver's recommendations regarding their claims. The Receiver has made minimal refinements to his recommendations

As to the Non-Objecting Investors, the Receiver's claim recommendation is reasonable and appropriate.

As to the Non-Objecting Investors, the Court recommends that the Receiver's claim recommendations as set forth in the Receiver's Second Revised Investor Claim Summary Report [Dkt. 119; Exhibit 2-B], Second Revised Creditor Claim Summary Report [Dkt. 119; Exhibit 2-C], and Revised Life Settlement Investor Claim Summary Report [Dkt. 119; Exhibit 2-D] be approved by the Court.

## Recommendation

For the reasons stated above, the undersigned makes the recommendations stated above to Claimant's objections to the Receiver's Claims Report [Dkt. 69] and Supplemental Claims Report [Dkt. 89]. If the Court accepts those recommendations, the undersigned recommends that the Court direct the Receiver to prepare a Revised Investor Claims Summary reflecting the Court's acceptance of the undersigned's recommendations to attach to the Court's Final Order.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: April 9, 2020

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE